### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **v.** | § | |
| | § | **3:17-CR-01569-DCG-1** |
| **(1) EVER A. JOHNSON,** | § | |
| | § | |
| *Defendant.* | § | |

### <u>MEMORANDUM OPINION AND ORDER</u>

*Pro se* Defendant Ever A. Johnson asks the Court for compassionate release—that is, to reduce his criminal sentence to time served—under the First Step Act.  Mot. Reduce Sentence, ECF No. 66; Reply, ECF No. 81; *see also* 18 U.S.C. § 3582(c).  He also asks the Court to (1) appoint him counsel and (2) order U.S. Probation and Pretrial Services to investigate his son's whereabouts.  Mot. Counsel, ECF No. 67; Mot. U.S. Probation, ECF No. 68.  The Government opposes Johnson's requests for compassionate release and appointed counsel; it takes no position on Johnson's request for an order requiring U.S. Probation and Pretrial Services to conduct a factual investigation on Johnson's behalf.  Resp., ECF No. 76; Surresponse, ECF No. 83.  The Court **DENIES** Johnson's three motions.

### I.     BACKGROUND

Johnson is serving a 137-month prison term for four counts of bank robbery and one count of bank robbery by the use of a dangerous weapon or device, each of which Johnson pleaded guilty to.  *See* Am. J., ECF No. 54; Am. Plea Agreement, ECF No. 38; *see also* 18 U.S.C. § 2113(a), (d).  Johnson is also serving an 18-month sentence, running consecutively to

his 137-month sentence, for violating his supervised release in a separate case.[1]  *See* Order

Revoking Supervised Release, *United States v. Johnson*, No. EP-10-CR-01166-PRM-1 (W.D.

Tex. May 2, 2018), ECF No. 60.  He is currently housed at Schuylkill Federal Correctional

Institution ("FCI Schuylkill") in Pennsylvania, and his anticipated release date is September 12,

2028.  *See* Fed. Bureau of Prisons, *Find an inmate*, https://www.bop.gov/inmateloc/ (last visited

Mar. 27, 2023) (Johnson BOP Register No. 36862-013).

## II.    DISCUSSION

### A.  Motion for Compassionate Release

Johnson says several facts support his compassionate release, including that he is the only

available caretaker for his son, that he has experienced harsher than expected prison conditions,

and that his medical conditions render him particularly susceptible to severe illness if he were to

contract COVID-19.  Mot. Reduce Sentence at 2–6; Reply at 4–6.[2]  Johnson does not, however,

request that he be totally free of his original sentence.  In exchange for his release from prison,

he asks the Court to "increase his supervision conditions to include the first 24 months in a

combination of community and home confinement, with strict conditions of work, and medical

appointments, and nothing else."[3]  Mot. Reduce Sentence at 8.  He also requests confinement in

---

[1] Johnson committed the five bank robberies while he was on supervised release.  Order Revoking Supervised Release, *United States v. Johnson*, No. EP-10-CR-01166-PRM-1 (W.D. Tex. May 2, 2018), ECF No. 60, at 1; *see also* Resp. at 6.

[2] References to page numbers in this Memorandum Opinion and Order refer to the page numbers assigned by the Court's CM/ECF system, not the cited documents' internal pagination.

[3] A note regarding home confinement.  While it appears the majority of courts to address the issue have held that district courts lack the authority to order home confinement under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, *see, e.g.*, *United States v. Lang*, 835 F. App'x 790, 791 n.5 (5th Cir. 2021), a district court may have the authority to "impose home confinement as a condition of compassionate release" under 18 U.S.C. § 3582(c)(1)(A), *see, e.g.*, *United States v. Soun*, 492 F. Supp. 3d 1314, 1318 (S.D. Ala. 2020) (collecting cases).  But because Johnson is not entitled to compassionate release in any form, the Court need not decide whether it has the authority to impose home confinement as a condition of compassionate release.

a halfway house upon his desired release so that he can "gain employment and housing[] suitable

for him and his son." *Id.* at 8–9.

Generally, a "court may not modify a term of imprisonment once it has been imposed."

18 U.S.C. § 3582(c).  But there are exceptions.  A defendant may request a modification of his

sentence, and a court may accordingly modify his sentence, if:

(1) The defendant has exhausted his administrative remedies;

(2) "[E]xtraordinary and compelling reasons" warrant a reduction in his sentence;[4]

(3) A reduction in his sentence is "consistent with applicable policy statements issued by the Sentencing Commission;" *and*

(4) A reduction in his sentence "would be consistent with the sentencing factors in 18 U.S.C. § 3553(a)."

*United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022) (quoting 18 U.S.C.

§ 3582(c)(1)(A)).

### *1.  Exhaustion of Administrative Remedies*

If a defendant fails to "submit a request to 'the Bureau of Prisons to bring a [sentence

reduction] motion on the defendant's behalf'" before moving for compassionate release, the

---

[4] A defendant need not show extraordinary and compelling circumstances if he

is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g).

18 U.S.C. § 3582(c)(1)(A)(ii).  Johnson does not qualify for this exception and therefore must show that extraordinary and compelling circumstances justify reducing his sentence.  *See, e.g.*, Med. R., Resp. Ex. C, ECF No. 78, at 184 (showing Johnson was born in 1982, making him less than 70 years old).

court must deny his motion.[5]  *United States v. Franco*, 973 F.3d 465, 468–69 (5th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Government concedes that Johnson has exhausted his administrative remedies, *see* Surresponse at 1; Warden's Resp. Request, Reply Ex. 4, ECF No. 81-1, at 9–11, so the Court moves to the second component of the compassionate release analysis.

### 2.   *Extraordinary and Compelling Circumstances*

Johnson alleges several facts that he says constitute extraordinary and compelling circumstances that warrant his compassionate release:

(1) His son's biological mother has allegedly abandoned their son and Johnson is now the only person available to take care of him;

(2) Harsh confinement conditions; and

(3) Underlying medical conditions and FCI Schuylkill's allegedly inadequate medical care place him at heightened risk of severe illness due to COVID-19.

Mot. Reduce Sentence at 2–6; Reply at 4–6.

Johnson provided four affidavits in support of some of his allegations:

(1) An affidavit from his sister who states that his son's biological mother had "given [his son] up for adoption" in March 2018.[6]  P. Johnson Aff., ECF No. 79, at 1.

(2) An affidavit from Johnson's nephew, who says he "need[s] [his] uncle" back so that he can be "a role model" and so that Johnson can "fight to have his son back."  G. Johnson Aff., ECF No. 79, at 3.

(3) The first (of two) of Johnson's own affidavits in which he says that he "recently became aware that [his] son . . . was abandoned by his biological mother and

---

[5] A defendant cannot move for a sentence reduction in district court until he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

[6] Ms. Johnson's affidavit says nothing about whether Johnson's son was ever adopted.  *See generally* P. Johnson Aff., ECF No. 79.

was left with an elderly couple" sometime around August 2019.  1st Johnson Aff., ECF No. 67, at 4–5.

(4) Johnson's second affidavit in which he describes the alleged conditions of his confinement and mentions, without further detail, that his son's biological mother "surrender[ed] custody of [his] child to an [e]lderly couple." 2d Johnson Aff., ECF No. 80, at 1–4.

The Government argues that Johnson has failed to show extraordinary and compelling circumstances justifying a reduction of his sentence.  Resp. at 11–16.  Specifically, the Government says,

(1) Johnson has offered no credible evidence that he is the only available caretaker for his son, *id.* at 16;

(2) Johnson's alleged harsh conditions of confinement stem from the Federal Bureau of Prison's ("BOP") attempts to limit the spread of COVID-19 and thus cannot form the basis of extraordinary and compelling circumstances, *id.* at 13–14, and;

(3) Johnson has not shown his medical conditions put him at substantial risk of a severe case of COVID-19, *id.* at 12–13; Surresponse at 3–8.

The First Step Act does not define the phrase "extraordinary and compelling." *See United States v. Rodriguez*, 27 F.4th 1097, 1099 (5th Cir. 2022) ("There is little developed guidance on what constitutes extraordinary and compelling reasons for a sentence reduction because neither § 3582 nor the [U.S. Sentencing] Guidelines fully define or limit those reasons.").  Nevertheless, "the commentary to the Sentencing Guidelines ('U.S.S.G.') § 1B1.13 informs [the] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021); *see also Jackson*, 27 F.4th at 1090 (explaining that the Sentencing Guidelines commentary "does not bind a district court" but does "inform the district court's analysis" (cleaned up)).  Under U.S.S.G. § 1B1.13, extraordinary and compelling reasons may exist if:

(1) The defendant is suffering from certain serious medical conditions;

(2) "The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less;" *or*

(3) There are certain "family circumstances," including the "death or incapacitation of the caregiver of the defendant's minor child."[7]

U.S.S.G. § 1B1.13 cmt. n.1(A)–(C).

The defendant bears the burden of establishing that extraordinary and compelling reasons warrant a reduction of his sentence. *See Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021).

### a. Johnson's Alleged Family Circumstances

Johnson has failed to establish that his family circumstances are extraordinary and compelling. In his Motion for Compassionate Release and his own affidavits, Johnson alleges that his son's biological mother abandoned their minor child and left him with an elderly couple, but he fails to adequately explain the entire situation. *See* Mot. Reduce Sentence at 2–3; 1st Johnson Aff. at 4; 2d Johnson Aff. at 1. Johnson's sister's and nephew's affidavits fare little better at adequately explaining Johnson's factual assertions. For example, Johnson's sister says that the minor child's biological mother gave Johnson's son "up for adoption without [Johnson's] notice or consent" and that the minor child was "staying with the family." P. Johnson Aff. at 1–2.[8] But Johnson's sister provides no further information about who is caring for Johnson's son, such as who "the family" is, despite clearly indicating that *someone* is

---

[7] There is also a catch-all that says there may be "other" extraordinary and compelling reasons that warrant sentence reduction. U.S.S.G. § 1B1.13 cmt. n.1(D) ("As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).").

[8] Johnson's nephew's affidavit provides even less detail. In fact, it says nothing about the status of Johnson's son. *See* G. Johnson Aff. at 3.

looking after Johnson's son.  *See id.*  These affidavits fail to establish the Johnson is the only available caregiver for his son.

To the contrary, these affidavits suggest Johnson's son *is* being cared for.[9]  According to Johnson and his sister, his son is in the care of an "elderly couple."  1st Johnson Aff. at 4; P. Johnson Aff. at 1–2.  Johnson "cannot establish he is the sole caregiver without addressing the inability" of the elderly couple "to provide care for his child in his absence."  *Cf. Rooks*, 2022 WL 267899, at *7; *United States v. Duggins*, No. 2:18-1061, 2021 WL 5449642, at *5 (S.D. Tex. Nov. 22, 2021) (pointing out that the defendant's "affidavit states that [his] children [were] being cared for" and thus the defendant "ha[d] offered no evidence that he is the only available caregiver for his minor children").  Nor can Johnson establish he is the sole caregiver without addressing whether his family members, who live in El Paso, can care for his son.[10]  *See* PSR ¶ 86 (indicating Johnson has a sister and stepbrother in El Paso); *see also, e.g.*, *Rooks*, 2022 WL 267899, at *6–7; *United States v. Ruiz*, EP-18-CR-03076-DCG-4, 2021 WL 5889986, at *3 (W.D. Tex. Dec. 10, 2021) (Guaderrama, J.) (holding the "[d]efendant [did] not show[] that he [was] the only available caregiver" because he did not show that his nearby family members

---

[9] The Court assumes, without deciding, that Johnson's son's biological mother has in fact abandoned her responsibility for caring for their child.  The Court notes, however, that this was not the case when it sentenced Johnson; at that time, Johnson's son was in his biological mother's care. Presentence Investigation Report (PSR), ECF No. 43 ¶ 88; *see also United States v. Rooks*, Nos. 21-cr-038, 21-cr-043, 2022 WL 267899, at *3–4, 6 (E.D. Pa. Jan. 28, 2022) (looking to the defendant's PSR for information about who had responsibility for a minor child at the time defendant moved for compassionate release).

[10] Johnson's sister expressed that she was unable "to fight for [Johnson's minor child]" in March 2018, when she allegedly learned that he was being adopted, but does not say whether she is currently unable to take care of Johnson's son.  P. Johnson Aff. at 1–2; *see also Rooks*, 2022 WL 267899, at *6–7 (explaining that "[i]n the event [the defendant's child's mother] has already or subsequently does abandon responsibility for the child, [the defendant] has several family members who he has also failed to establish are unable to provide care for the child" and that the defendant "cannot establish he is the sole caregiver available without addressing the inability of additional nearby family members to provide care for his child").

couldn't care for the minor child); *United States v. Castillo*, No. 4:16-CR-142(1), 2022 WL 2718724, at *5 (E.D. Tex. July 13, 2022) (holding that the defendant "ha[d] not demonstrated that he [was] the only available caregiver for the child, as his mother and sister both reside[d]" in the area where his child resided).

Johnson cites two cases that he says support his compassionate release as the only available caregiver for his son.  Mot. Reduce Sentence at 2.  Neither of those cases are analogous the Johnson's family circumstances.  In *United States v. Bucci*, the district court found that the defendant was the "*the only* potential caregiver for his ailing mother" and thus was entitled to compassionate release.  409 F. Supp. 3d 1, 2–3 (D. Mass. 2019) (emphasis added).  Same in *United States v. Lisi*.  440 F. Supp. 3d 246, 251–52 (S.D.N.Y. 2020) (finding that defendant's mother was "incredibly unwell," that defendant's sister was either unable "or [had a] complete aversion to helping" their mother, and that defendant was the only available caregiver).

As explained, Johnson has not shown that the "elderly couple" or his El Paso-based family members cannot care for his son.  Thus, Johnson's family circumstances do not amount to extraordinary and compelling reasons justifying compassionate release.

### b.  Johnson's Alleged Harsh Confinement Conditions

Johnson alleges that "[s]ince the commencement of the pandemic," he has been subjected to "harsh conditions, with numerous and extended restrictive measures."  Mot. Reduce Sentence at 3–5 (mentioning, among other conditions, "24/7 complete lockdown[s], sometimes weeks without clean clothes, or showers . . . [and] months of not being able to even go outside"). Because the sentencing court did not factor these harsh conditions into his punishment, Johnson argues, he has suffered unanticipated "extraordinary" terms of imprisonment that warrant compassionate release.  *Id.*  The Government counters that BOP introduced restrictive measures

to stem the spread of COVID-19 and that every inmate faces the circumstances Johnson complains of. Resp. at 13–14. Because the circumstances affect everyone, the Government argues, they cannot be "extraordinary." *Id.*

Courts have generally held that harsh conditions faced by all inmates are not extraordinary within the meaning of the First Step Act. *United States v. Koons*, 455 F. Supp. 3d 285, 291 (W.D. La. 2020) (explaining "circumstances [that] are applicable to all inmates who are currently imprisoned . . . are not unique to any one person"); *United States v. Barth*, No. 16-cr-143-SE, 2023 WL 35905, at *2 (D.N.H. Jan. 4, 2023) (collecting cases).[11] The Government explains that BOP imposed the conditions Johnson complains about "to prevent the spread of COVID-19." Resp. at 13. If the conditions Johnson—and all other inmates face—were extraordinary, that would potentially put BOP in a catch-22. That is because the flip side to relaxed conditions may well be inmates' increased likelihood of contracting COVID-19. And courts have considered a prison's *lack* of COVID-19 precautions to weigh in favor of compassionate release. *See United States v. Centeno*, No. 4:14-CR-00081(10), 2021 WL 3604748, at *5 (E.D. Tex. Aug. 13, 2021). The Court thus agrees that the harsh conditions Johnson argues warrant his compassionate release are not extraordinary because all inmates at FCI Schuylkill face the same. *See* Resp. at 14 ("All the inmates at FCI Schuylkill are in the same situation as Defendant.").

---

[11] *See also United States v. Nelson*, No. 1:08-cr-068, No. 1:08-cr-069, 2023 WL 171145, at *5 (S.D. Ohio Jan. 12, 2023); *United States v. Garcia*, No. 3:15-CR-0194-B-1, 2021 WL 3269774, at *3 (N.D. Tex. July 30, 2021) ("[T]he [c]ourt notes that to the extent [the defendant] raises concerns about the conditions at [the prison], those concerns do not give rise to extraordinary and compelling circumstance because they are not individual to [the defendant]."); *United States v. Hudson*, No. 10-329, 2021 WL 2912012, at *4 (E.D. La. July 12, 2021) (explaining that hardships "confront[ed] [by] other inmates" are "more ordinary than [they are] extraordinary"); *United States v. Iruegas*, No. 2:18-366, 2021 WL 1169348, at *2 (S.D. Tex. Mar. 25, 2021).

The cases Johnson cites do not persuade the Court otherwise.  Two of the cases do, however, support the proposition that harsh conditions resulting from a prison's COVID-19 precautions might warrant compassionate release.  *See United States v. Osorio-Perez*, No. 16-CR-826-LTS, 2021 WL 3473765, at *2–3 (S.D.N.Y. Aug. 6, 2021); *United States v. McCann*, 20-CR-58 (VSB), 2021 U.S. Dist. LEXIS 132132, at *8–10 (S.D.N.Y. July 15, 2021) ("[T]he pandemic, aside from posing a threat to a defendant's health, has made a defendant's incarceration harsher and more punitive than would otherwise have been the case." (cleaned up)).  Both cases, however, are distinguishable from Johnson's.

In *Osorio-Perez*, the defendant had only one month left in prison before the BOP planned to release him, *Osorio-Cortez*, 2021 WL 3473765, at *3, whereas Johnson has approximately five years left, *see* Fed. Bureau of Prisons, *Find an inmate*, https://www.bop.gov/inmateloc/ (last visited Mar. 27, 2023) (Johnson BOP Register No. 36862-013).  And in both *Osorio-Cortez* and *McCann*, the courts found that the totality of circumstances—not harsh conditions alone—warranted compassionate release.  *Osorio-Cortez*, 2021 WL 3473765, at *1–3 (taking into account the defendant's lack of disciplinary record, pursuit of education opportunities, harsh conditions, and his health conditions); *McCann*, 2021 U.S. Dist. LEXIS 132132, at *5–12 (taking into account the defendant's age (68), health conditions, prison's failure to provide an appropriate meal plan, harsh conditions, single disciplinary infraction, and familial support).[12]

---

[12] *United States v. Green* also supports Johnson's position.  No. TDC-10-0761, 2020 U.S. Dist. LEXIS 99129 (D. Md. June 4, 2020).  But this case is readily distinguishable because the harsh conditions the defendant complained about in *Green* were at the height of the first wave of the COVID-19 pandemic; the case was also pre-vaccines.  *See id.* at *6–11.  For example, the court explained that, among other things, the D.C. Jail "had acted slowly to, and had failed to, operationalize and enforce social distancing measures needed to avoid an unreasonable risk to the health of detainees" and that "the presence of COVID-19 remain[ed] a significant danger."  *See id.*  By contrast, FCI Schuylkill currently has zero COVID-positive staff or inmates and has zero recorded inmate deaths.  *See* U.S. Bureau of Prisons, COVID-19 Statistics (last visited Mar. 27, 2023), *available at* www.bop.gov/coronavirus/covid19_statistics.html.

Here, though, none of Johnson's asserted extraordinary and compelling reasons—separately or together—warrant his early release.

Some final points.  First, unlike *Osorio-Cortez* and *McCann*, Johnson does not have a clean disciplinary record.  Johnson's incarceration records show that he has committed six infractions, including destruction of property and assault without serious injury.  Disciplinary R., Resp. Ex. A, ECF No. 76-1, at 1–2.  Second, the Court appreciates Johnson's points, and it does not doubt his contention that prison conditions have been harsher than expected.  *See* Mot. at 4 (explaining that Johnson has had to deal with "24/7 complete lockdown[s], sometimes weeks without clean clothes, or showers . . . [and] months of not being able to even go outside"); *cf. Osorio-Cortez*, 2021 WL 3473765, at *1–3 (recounting harsh prison conditions); *McCann*, 2021 U.S. Dist. LEXIS 132132, at *5–12 (same).  But ultimately, the harsh conditions Johnson has faced do not outweigh the fact that all inmates have had to endure the same alleged conditions and that the totality of Johnson's circumstances do not weigh in favor of his early release.

### c.   Johnson's Alleged Medical Ailments and COVID-19

Johnson contends that he suffers from several medical ailments that warrant his compassionate release, including vision issues, hypertension, obesity, elevated body mass index (BMI), respiratory problems, pre-diabetes, enlarged prostate, hernia, back problems, and mental health issues.  Mot. Reduce Sentence at 5–6; Reply at 1.  The Government responds that because Johnson has been vaccinated against COVID-19, he cannot show that his conditions, to the extent they exist, put him at risk of serious illness from COVID-19.  Resp. at 11–13; Surresponse at 3–8.

Commentary to the Sentencing Guidelines—which, to reiterate, inform but don't bind the Court—explain that medical conditions warranting a sentence reduction include those that are

"serious" and "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).  Effectively managed conditions that do *not* "substantially diminish the ability of the defendant to provide self-care" are unlikely to warrant sentence reduction.  *See, e.g.*, *Thompson*, 984 F.3d at 433–35; *Rodriguez*, 27 F.4th at 1100.

Besides a resolved respiratory infection that occurred over ten years ago, Med. R., ECF No. 78, at 94, the Court has found no evidence Johnson suffers from vision issues, an enlarged prostate, obesity, elevated BMI, prediabetes, or respiratory problems, *see generally id.* at 1–199. Johnson has thus failed to carry his burden to show that any of these purported ailments constitute extraordinary and compelling reasons justifying compassionate release.

That leaves hypertension, a hernia, back problems, and mental health issues, which evidence shows he suffers from.  *See generally id.*  Out of those issues, the CDC recognizes that hypertension and certain mental health disorders can increase a patient's COVID-19 risk.  CDC, *People with Certain Medical Conditions* (Feb. 10, 2023), *available at* www.cdc.gov/coronavirus/ 2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  Johnson, however, is effectively managing each of his medical ailments.  *See, e.g.*, Med. R. at 55–60 (hernia), 116 (back pain and medication), 125 (medication), 137–39 (mental health and medication), 173 (medication).  Because Johnson is managing his medical issues, and because they are commonplace ailments, they do not constitute extraordinary circumstances.  *See Thompson*, 984 F.3d at 433–34 (holding that managed and "commonplace" illnesses, like hypertension, do not support a finding of extraordinary circumstances supporting compassionate release).

Johnson is also vaccinated against COVID-19.  *See* Med. R. at 198–99.  That places Johnson at a "lower risk of severe illness."  CDC, *Overview of COVID-19 Vaccines* (Nov. 1,

2022), *available at* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/overview-COVID-19-vaccines.html.  Absent some showing that the vaccine has reduced efficacy or is ineffective for Johnson, he cannot show that his medical conditions warrant compassionate release.  *See United States v. Orrantia*, EP-19-CR-02181(2)-DCG, 2022 WL 686463, at *3 (W.D. Tex. Mar. 8, 2022) (Guaderrama, J.) (collecting cases).

### 3.  *Remaining Factors and Conclusion*

Because Johnson has not shown that extraordinary and compelling circumstances warrant his compassionate release, the Court need not assess whether his release would be consistent with the sentencing factors in 18 U.S.C. § 3553(a).  *See, e.g.*, *United States v. Barrios*, EP-20-CR-01838(1)-DCG, 2022 WL 7265985, at *6 (W.D. Tex. Sept. 27, 2022) (Guaderrama, J.) (concluding same).

In sum, considering Johnson's alleged family circumstances, harsh confinement conditions, and medical ailments, the Court concludes that no extraordinary and compelling circumstances exist that warrant a reduction in Johnson's sentence.  The Court thus **DENIES** Defendant Ever A. Johnson's "Motion for a Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A)" (ECF No. 66).

## B.  Motion for Appointment of Counsel

Johnson asks the Court to appoint him counsel under 18 U.S.C. § 3006A.  Mot. Counsel at 1.  It appears Johnson primarily wants counsel's assistance to help prosecute the portion of his compassionate release motion that alleges his family circumstances warrant his early release. *See id.* at 1–3; Johnson Aff. at 4–7.  The Government asks the Court to exercise its discretion and deny Johnson's request.  Resp. at 20–21.

Johnson has neither a statutory nor constitutional right to counsel to represent him on his motion for compassionate release.  *See United States v. Whitebird*, 55 F.3d 1007, 1010–11 (5th Cir. 1995); *United States v. Delco*, No. 09-57, 2020 WL 4569670, at *2 (E.D. La. Aug. 7, 2020).  It is within the district court's discretion to appoint counsel, *see, e.g.*, *Whitebird*, 55 F.3d at 1011, and a court may exercise that discretion "in the interest of justice," *Barrios*, 2022 WL 7265985, at *7 (quotation omitted).  It is often in the interest of justice to appoint counsel "when the issue to be decided is significant, complex, or exceptional, or when the movant is demonstrably severely hampered in presenting [his] argument or investigating relevant facts."  *United States v. de la Garza*, No. 7:19-cr-01401-2, 2021 WL 2682035, at *1 (S.D. Tex. June 30, 2021).

The Court concludes that Johnson's motion for compassionate release does not present the kinds of issues that justify appointing him counsel.  The Court thus **DENIES** Defendant Ever A. Johnson's "Motion to Appoint Counsel" (ECF No. 67).

## C.  Motion to Order U.S. Probation and Pretrial Services to Perform Investigation

Johnson asks the Court to order U.S. Probation and Pretrial Services to "investigate the whereabouts of his son, and to contact the appropriate state authorities concerning [the] situation."  Mot. U.S. Probation at 1.  He argues that such an investigation is necessary in part because the law requires him to provide evidence supporting his assertion that he is the only available caretaker for his son.  *Id.* at 2 (citing *United States v. Burkett*, No. 3:17-CR-00420-N(1), 2020 WL 5747872 (N.D. Tex. Sept. 25, 2020)).  It is difficult, Johnson argues, to obtain the appropriate evidence while he is incarcerated.  *Id.*

Pretrial Services's functions are set out in 18 U.S.C. § 3154, and Probation's duties in 18 U.S.C. § 3603.  Neither of these sections suggest that U.S. Probation and Pretrial Services are available to investigate, at the direction of a district court, factual claims made by an inmate

seeking release under 18 U.S.C. § 3582(c).  It's true that U.S. Probation and Pretrial Services are part of the United States Courts.  *See* 18 U.S.C. § 3602(a) (providing that district courts "shall appoint" probation officers); *id.* § 3152 (providing that "the Director of the Administrative Officer of the United States Courts . . . shall . . . provide . . . for the establishment of pretrial services").  It's also true that U.S. Probation and Pretrial Services conduct factual investigations that assist district courts with understanding a defendant's life.  *See, e.g.*, *id.* § 3603(2) (instructing probation officers to "keep informed, to the degree required by the conditions specified by the court, as to the conduct and condition of a probationer . . . and report his condition and condition to the sentencing court"); *id.* § 3154(a) (instructing pretrial services to "[c]ollect, verify, and report to the judicial officer" certain information relevant to pretrial release).  But none of these sections speak to a district court's authority to order U.S. Probation and Pretrial Services to investigate a defendant's factual claims that might support a motion for compassionate release.

The Court is aware of only one district court that has ordered U.S. Probation and Pretrial Services to do as Johnson asks.  *See United States v. Douglas*, 8:17CR372, 2023 WL 2374462, at *1–2 (D. Neb. Mar. 6, 2023) (ordering U.S. Probation "to investigate [the defendant's compassionate] release request").[13]  That court, however, did not explain its order or cite any

---

[13] The Court is aware of two other instances of district courts ordering U.S. Probation and Pretrial Services to conduct factual investigations in connection with compassionate release requests.  The first is *United States v. Rodriguez*, No. 3:07-CR-00146 (JCH), 2022 WL 1043670, at *2 (D. Conn. Apr. 6, 2022).  The *Rodriguez* court stayed its own grant of defendant's compassionate release motion while U.S. Probation "investigate[d] and approve[d] the [defendant's] proposed housing."  *Id.* at *2.  But, as compared to Johnson's request, that order is more squarely within the wheelhouse of U.S. Probation and Pretrial Service's functions and duties.  *Compare* 18 U.S.C. 3563(b)(11), (13) (providing that a district court may order defendants to reside in particular places as a probation condition), *with id.* § 3603(7) (providing that probation officers must "keep informed concerning" a defendant's "compliance with any condition of probation").

The second is *United States v. Fields*, 554 F. Supp. 3d 324 (D.N.H. 2021).  The *Fields* court referenced its earlier order commanding U.S. Probation to investigate claims made by a defendant that

authority for the proposition it had the power to issue such an order. *See generally id.* at *1–2. *Douglas* thus does little to help this Court answer whether it can order U.S. Probation and Pretrial Services to investigate Johnson's factual claims.

*Douglas* is also at odds with the typical division of responsibility for investigating factual claims. What generally happens is a defendant's counsel investigates the facts. *See, e.g.*, *United States v. Wade*, No. 4:16-CR-140, 2020 WL 4249179, at *2 (E.D. Tex. July 22, 2020). But the Court understands that not all defendants can afford counsel and sometimes, like here, courts deny a defendant's request to appoint them counsel. So this typical division of responsibilities does not get the Court very far either.

Ultimately, though, the Court need not answer whether it has the authority to order U.S. Probation and Pretrial Services to investigate Johnson's factual claims. Assuming the Court does have the authority, it has discretion to issue such an order. *Cf.* 18 U.S.C. § 3603(2) (requiring probation officers to track defendants "to the degree required by the conditions specified by the sentencing court," which can include discretionary conditions); *United States v. Talbert*, 501 F.3d 449, 453 (5th Cir. 2007) (upholding district court's discretionary order that a probation officer determine whether defendant should register as a sex offender under state law). And the Court declines to exercise that discretion here. It is apparent that Johnson has support from his family members. *See generally* P. Johnson Aff. (supporting affidavit from Johnson's sister). His family members also appear invested in his release and knowledgeable about the factual basis for Johnson's motion. *Id.* at 1–2 (showing Johnson's sister is aware of where Johnson's son had

---

BOP was violating the court's order. *Id.* at 334. The *Fields* court, however, did not explain its authority to issue that order. *Fields*, No. 1:14-cr-00074-LM-1, Text Order (Feb. 16, 2021). In any event, *Fields* is not directly on point with Johnson's request because in *Fields* the court ordered U.S. Probation and Pretrial Services to investigate a situation on behalf of the court, while Johnson asks that this Court order U.S. Probation and Pretrial Services to investigation a factual allegation on his behalf.

been staying).  In sum, Johnson's evidence suggests that he has a support structure that could assist him with developing his factual claims.

The Court recognizes Johnson's predicament.  He is correct that it is difficult for him to obtain appropriate evidence supporting his motion while he is incarcerated.  *See* Mot. U.S. Probation at 1.  But, given the record before the Court, he has not shown that the Court should order U.S. Probation and Pretrial Services to investigate his factual claims.  The Court thus **DENIES** Defendant Ever A. Johnson's "Motion for an Order the [sic] U.S. Probation Department" (ECF No. 68).

### III.    CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendant Ever A. Johnson's

(1) "Motion for a Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A)" (ECF No. 66);

(2) "Motion to Appoint Counsel" (ECF No. 67); and

(3) "Motion for an Order the [sic] U.S. Probation Department" (ECF No. 68).

**So ORDERED and SIGNED this 28th day of March 2023.**

**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**

- 17 -